IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| HAMPTON UNIVERSITY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 4:20cv118 (RCY) |
| ) | |
| ACCREDITATION COUNCIL FOR ) | |
| PHARMACY EDUCATION, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

This matter is before the Court on Defendant's Partial Motion to Dismiss (ECF No. 31). Defendant seeks an order dismissing Counts IV, V, and the related portions of Count IX of Plaintiff's amended complaint with prejudice pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.[1] The motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Motion to Dismiss will be granted.

## I. BACKGROUND

This is a lawsuit stemming from the Accreditation Council of Pharmacy Education's ("ACPE's") decision to withdraw accreditation from the Hampton University School of Pharmacy ("HUSOP"). Plaintiff Hampton University ("Hampton" or "Plaintiff") filed its Complaint on July 23, 2020. On September 1, 2020, Defendant filed the instant Partial Motion to Dismiss. (ECF No. 31.) Defendant sought to dismiss two of Plaintiff's nine counts (Counts IV and V) and the related

---

[1] Defendant's partial motion to dismiss has been deemed to apply to the amended complaint (ECF No. 93), filed after the briefing on Defendant's Partial Motion to Dismiss. (*See* ECF Nos. 91-92.) While the parties' briefs, filed before the complaint was amended, refer to the "Complaint," the Court's analysis focuses on the related portions of the amended complaint. Plaintiff's amended complaint did not add, subtract, or substantively alter Plaintiff's claims for relief.

portions of Plaintiff's declaratory judgment count (Count IX).  Plaintiff opposed this motion and alternatively sought leave to amend its complaint.  (ECF No. 33.)

On July 27, 2021, the Court issued an opinion and order that addressed a number of pending motions.  (ECF Nos. 91-92.)  The order (1) granted Plaintiff's Motion to Amend its complaint, (2) denied Plaintiff's Motion to Supplement the Administrative Record, (3) denied Plaintiff's request for additional discovery, and (4) granted Plaintiff's request to issue a scheduling order, pending an initial pretrial conference.

The Court incorporates its discussion of the factual and procedural history of this action from its prior memorandum opinion (ECF No. 91).  Hampton filed this lawsuit to stop the withdrawal of accreditation of its School of Pharmacy by the national licensing body for pharmacy schools, ACPE.  Hampton University is a member of the Historically Black Colleges and Universities (HBCUs) and is based in Hampton, Virginia.  (Am. Compl., ECF No. 93 ¶ 1.)  ACPE is a Department of Education-recognized national accrediting agency for pharmacy schools.  (*Id.* ¶ 2.)  This Department of Education recognition grants ACPE significant power with respect to pharmacy programs because its accreditation gives pharmacy schools access to critical federal funding programs and determines whether graduates can practice pharmacy in certain states, including Virginia.  (*Id.*); *see* 20 U.S.C. § 1099b(j); Va. Code § 54.1-3312.  ACPE's accreditation actions are based on twenty-five accreditation standards ("Standards 2016") that it develops, and accreditation is pursuant to its Policies and Procedures.  (Am. Compl. ¶¶ 16, 23, 42, 68; Policies and Procedures, ECF No. 13-8; Standards 2016, ECF No. 56-2 at 197.)

On January 25, 2020, at the conclusion of multiple years of program monitoring and over two years of probation, the ACPE Board of Directors ("ACPE Board") issued an Accreditation Action and Recommendations Report ("A&R") that withdrew HUSOP's accreditation as a pharmacy school "for issues of compliance" with "Standard No. 17: Progression."  (ECF No. 56-2 at 543-44.)  Hampton filed a notice of appeal of the ACPE Board's decision in February, and a

2

Zoom hearing was held before the ACPE Appellate Commission on April 28, 2020. On June 11, 2020, the ACPE Appellate Commission affirmed the withdrawal of HUSOP's accreditation in a one-page report. (ECF No. 56-2 at 552.) The withdrawal was formalized with the issuance of the ACPE Board's July 29 - August 1, 2020 Accreditation Action and Recommendations Report. (ECF No. 55-2 at 221.)

Hampton's suit brings nine claims for relief. (Am. Compl. ¶¶ 88-157.) Relevant to the instant Motion to Dismiss, Plaintiff asserts that Defendant's decision to withdraw HUSOP's accreditation violated the Higher Education Act ("HEA") and that the decision constituted unlawful discrimination on the basis of race pursuant to 42 U.S.C. § 1981. (*Id.* ¶¶ 115-128.) Plaintiff also seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that the withdrawal was wrongful for various reasons, including because it violated the HEA and was racially motivated. (*Id.* ¶¶ 151-57.)

## II. ACPE'S PARTIAL MOTION TO DISMISS

On September 1, 2020, ACPE filed a Partial Motion to Dismiss (ECF No. 31), which seeks dismissal of Counts IV, V, and portions of Count IX of Plaintiff's amended complaint. Defendant seeks to dismiss Count IV, violation of due process under the Higher Education Act, for lack of jurisdiction under FRCP 12(b)(1) based on the argument that the HEA does not create a private right of action. ACPE seeks to dismiss Count V, violation of 42 U.S.C. § 1981, for failure to state a claim under FRCP 12(b)(6) on two separate bases. First, Defendant argues that Plaintiff has not pled the existence of a contract sufficient to give rise to a § 1981 claim. Second, Defendant argues that Plaintiff has not sufficiently pled that the withdrawal would not have occurred "but for" racial discrimination. Finally, Defendant seeks to dismiss the portions of the declaratory judgment count (Count IX) that stem from the claims in Counts IV and V.

3

## III. LEGAL STANDARD

Rule 12(b)(1) allows for dismissal of a claim for "lack of subject-matter jurisdiction . . . ." A claim can be dismissed for lack of subject-matter jurisdiction when the federal law invoked by a private plaintiff does not include a private right of action. *See Halzack Watkins v. Educ. Credit Mgmt. Corp.*, No. 2:09CV472, 2010 WL 2520653, at *2-*3 (E.D. Va. June 17, 2010) (dismissing claim by individual plaintiff under Rule 12(b)(1) because HEA does not create a private right of action).

Rule 12(b)(6) allows the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Dismissals under Rule 12(b)(6) are generally disfavored by the courts because of their *res judicata* effect. *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991). The Federal Rules of Civil Procedure only require that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.

However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

4

556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Id.*

## IV. DISCUSSION

### A. Count IV: Due Process Claim Under the Higher Education Act

#### 1. Party Arguments

Defendant makes a simple argument for dismissal of Count IV for lack of jurisdiction: case law is clear that the Higher Education Act does not confer a private right of action. (Mem. Supp., ECF No. 32 at 8-9.) Defendant cites to *Professional Massage Training Center, Inc. v. Accreditation Alliance of Career Schools and Colleges*, in which the Fourth Circuit explained that "nearly every court to consider the issue in the last three decades agrees that there is no express private right of action available to enforce the Higher Education Act . . . ." 781 F.3d 161, 169 (4th Cir. 2015) (internal quotation omitted). Defendant notes that the HEA does not change the underlying substantive standard—common law due process—so it neither confers a private right of action nor impacts the analysis of a due process claim. (Reply Supp., ECF No. 40 at 16-17.)

Plaintiff's response to the Motion to Dismiss Count IV is that "ACPE misconstrues Hampton's HEA claim; in reality, it is simply another common law due process claim that Hampton should be allowed to carry forward." (Resp. Opp'n, ECF No. 33 at 1.) Hampton analogizes its claim under the HEA to a negligence *per se* count, which can accompany a negligence count. (*Id.* at 14.)

5

### 2. Legal Background

Case law is abundantly clear that the Higher Education Act does not confer a private right of action. *See Key v. Robertson*, 626 F. Supp. 2d 566, 580 (E.D. Va. 2009) (citations omitted) ("[I]t appears clear as a matter of law that the Higher Education Act does not provide any express or implied private rights of action for violations of its provisions."). The Fourth Circuit refused to recognize such a private right of action in *Professional Massage*, holding that "'nearly every court to consider the issue' in the last three decades agrees that there is no express private right of action available to enforce the Higher Education Act . . . ." 781 F.3d at 169 (quoting *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1221 (11th Cir.2002)). Rather, claims for due process violations in the accreditation context arise under the federal common law. *Id.* at 169.

### 3. Application

Plaintiff's purported Higher Education Act claim fails because the law does not confer a private right of action upon individual plaintiffs, but rather sets forth a regulatory scheme enforced by the Department of Education. *See McCulloch*, 298 F.3d at 1221, 1224-25. Thus, the Court does not have jurisdiction over this claim. *See Halzack Watkins*, 2010 WL 2520653, at *2-*3. Plaintiff's analogy to a negligence *per se* claim is misplaced. While a negligence *per se* claim may be raised alongside a negligence claim and cite a statute or regulation to provide a substantive standard of care for a negligence claim, the HEA's requirement of "due process" does not provide any analogous substantive standard that informs the existing common law due process standard. Accordingly, the Court will dismiss this claim with prejudice.

## B. Count V: Violation of 42 U.S.C. § 1981

### 1. Party Arguments

ACPE makes two separate arguments that Hampton fails to state a claim under 42 U.S.C. § 1981. First, ACPE argues that Hampton cannot succeed on a § 1981 claim because there is no

"contract" between the parties on which a § 1981 claim can be based. (Mem. Supp. at 10.) Second, Defendant argues that Count V fails because the allegations in the complaint do not plausibly allege that racial discrimination was the "but for" cause of ACPE's withdrawal of Hampton's accreditation. (*Id.* at 14.)

First, Defendant argues that there is no requisite contract for a § 1981 claim because ACPE's accreditation standards ("Standards 2016") and its Policies and Procedures do not constitute a contract between ACPE and Hampton. (*Id.* at 10-13.)[2] Defendant cites to *Professional Massage* for the argument that the accreditation standards and procedures do not constitute contracts because ACPE can unilaterally alter both and is thus not bound by their terms. (*Id.* at 11-12 (citing *Pro. Massage*, 781 F.3d at 181 (holding that under Virginia law, accreditation standards did not constitute a contract because accrediting agency could unilaterally alter them)).) Defendant argues that the necessary element of mutual assent is thus not present. (*Id.* at 11, 13.) It urges the Court to adopt the reasoning of other federal courts, which have broadly held that the relationship between accrediting bodies and schools is generally not a contractual relationship. (*Id.* at 13 (citations omitted).)

Second, ACPE argues that Hampton has not met its burden to plausibly plead that its accreditation was withdrawn "but for" racial animus. (*Id.* at 14.) Defendant cites to the Supreme Court's recent opinion in *Comcast Corp. v. National Association of African-American Owned Media*, 140 S. Ct. 1009 (2020), for the proposition that "but for" causation is required under § 1981. (*Id.*) ACPE points to twelve non-discriminatory rationales for the withdrawal of accreditation that it drew from Plaintiff's complaint, and argues that, in light of these race-neutral

---

[2] The Court can consider the Policies and Procedures and Standards 2016 for purposes of this Motion to Dismiss because they are integral to Plaintiff's claim and were incorporated into the amended complaint by reference. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citing 5B Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007)).

7

explanations,[3] any assertion that race was the "but for" cause of the withdrawal is not plausible. (Reply Supp. at 11-12.)

Hampton disputes both of ACPE's suggested bases for dismissal of the § 1981. First, on Defendant's argument that there is no contract at issue, Plaintiff argues that the ACPE Policies and Procedures and the ACPE Standards 2016 constitute a contract. (Resp. Opp'n at 4, 5 n. 2.) Plaintiff's focus is on the Policies and Procedures. Hampton argues that a "cursory glance at the Policies and Procedures reveal that they are a contract" because they include a definitions section, forum selection clause, and right to appeal clause. (*Id.* at 4.) Plaintiff argues that the parties have mutual obligations: the Plaintiff pays a fee to ACPE in exchange for an accreditation review, and this arrangement thus involves offer (of payment), acceptance (accreditation services), and consideration (the fee). (*Id.* at 6-7.) Plaintiff construes two out-of-circuit cases for the proposition that evaluators and the subjects of evaluation can form a contractual relationship, and critiques the Fourth Circuit's decision on the contractual issue in *Professional Massage* as being based on "almost no analysis." (*Id.* at 7-9 (citations omitted).)

Hampton seeks to distinguish its case from that in *Professional Massage* by arguing that ACPE cannot unilaterally amend its accreditation standards at will because its Policies and Procedures require a notice and comment period before such a change. (*Id.* at 9.) Plaintiff then analogizes the purported contract to a contract of adhesion, which can still be a contract even if one of the parties cannot obtain a modification of the contract. (*Id.* at 10.) Finally, in addition to a few other side arguments, Plaintiff argues that the Partial Motion to Dismiss is improper because there are factual disputes over whether the Policies and Procedures constitute a contract. (*Id.* at 14-15.)

---

[3] For example, Defendant cites its various findings, mentioned in Plaintiff's complaint and amended complaint, that HUSOP was partially compliant or non-compliant with ACPE's standard 17. (Reply Supp. at 11-12.)

8

Second, on the causation argument, Plaintiff asserts that it has included enough allegations in its complaint to plausibly state a claim. (*Id.* at 11.) Hampton argues that it does not need to include certain "magic words," and that the facts alleged are sufficient. (*Id.*) Plaintiff points to the following allegations in its complaint:

- ACPE "discriminated against Hampton as a predominately Black institution" by holding it to more stringent standards than its policies require and that it applies to predominately white institutions, (Am. Compl., ECF No. 93 ¶¶ 122-23)[4];

- The existence of discrimination is evidenced by the use of "caustic, racially motivated words" by one of ACPE's representatives, (Am. Compl. ¶ 124);

- As a result, ACPE's actions violated HUSOP's rights as guaranteed by 42 U.S.C. § 1981, (Am. Compl. ¶ 125);

- ACPE subjected HUSOP to "non-existent standards or hyper-technical, unreasonable interpretations of its standards," which differed from its approach to predominately white institutions, (Am. Compl. ¶ 126).

(Resp. Opp'n at 12.) Plaintiff disputes Defendant's characterization of the "but for" standard, and argues that it need only show that discrimination was the "straw that broke the camel's back." (*Id.* at 11 (quoting *Burrage v. United States*, 571 U.S. 204, 211 (2014)).) Further, Plaintiff argues that a factual inquiry into the actual reasons for withdrawal is necessary, and that at this stage, the Court should not dismiss this count based on the contrary explanations put forward by the Defendant. (*Id.* at 13.)

### 2. Legal Background

42 U.S.C. § 1981 provides in part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as

---

[4] While the parties' briefs on the Partial Motion to Dismiss reference the original complaint, the Court cites to the corresponding paragraphs of the Amended Complaint, which was filed on August 3, 2021, throughout.

is enjoyed by white citizens . . . ." The right to "'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). The Fourth Circuit has explained that "[t]o prove a § 1981 claim . . . a plaintiff must ultimately establish both that the defendant intended to discriminate on the basis of race, and that the discrimination interfered with a contractual interest." *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 434 (4th Cir. 2006) (citations omitted). The "plaintiff bears the burden of showing that race was a but-for cause of its injury." *Comcast Corp.*, 140 S. Ct. at 1014. And the plaintiff must be able to identify a specific contract or contractual interest under which the plaintiff has or would have rights. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479–80 (2006) ("[A] plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce.'").[5]

In *Professional Massage*, the Fourth Circuit considered whether an accrediting body's standards of accreditation constituted a binding contract between the accrediting body and a massage program, and determined that they did not. 781 F.3d at 180-81. The Fourth Circuit held that "[t]he Standards of Accreditation do not constitute a binding contract between the agency and the accredited educational institutions because the Commission can alter the alleged 'contract' at will and, thus, is not bound by its terms." *Id.* at 181 (citing the accrediting body's standards). The standards in that case included a provision that they could be modified by the accrediting body at will and contained provisions regarding jurisdiction and venue for litigation, yet still were held not to be a contract. *See* Joint Appendix, *Pro. Massage Training Ctr., Inc. v. Accreditation All. of Career Schs. & Colls.*, No. 14-1086, J.A. 4790, 4857 (4th Cir. 2015) (Doc. No. 26-7).

---

[5] For reasons explained below, the Court will focus its analysis on the contract element.

Similarly, in *Chicago School of Automatic Transmissions, Inc. v. Accreditation Alliance of Career Schools & Colleges*, the Seventh Circuit held that contract law principles were categorically inapplicable to challenges by institutions to accreditation agencies' decisions. 44 F.3d 447, 449-50 (7th Cir. 1994). As that court explained:

> [A]ccrediting bodies are not engaged in commercial transactions for which state-law contract principles are natural matches. The "contract" the School wants to enforce is not a bargained-for exchange but a set of rules developed by an entity with many of the attributes of an administrative agency. Accreditation groups adopt and change their rules unilaterally; by posting an application fee a trade school cannot lock in a favorable set of rules. . . . If accreditation—which the Secretary of Education treats as a sort of license or certificate—were bestowed by the federal agency directly, no one would suppose that state law governed. Instead the Administrative Procedure Act would govern judicial review, and the court would inquire whether the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or reached "without observance of procedure required by law", 5 U.S.C. § 706(2)(A), (D).

*Id.* at 449. Following this reasoning, the Seventh Circuit held, "principles of federal administrative law supply the right perspective for review of accrediting agencies' decisions." *Id.* at 450. This rationale has been adopted by courts in other federal circuits. *See Found. for Interior Design Educ. Rsch. v. Savannah Coll. of Art & Design*, 244 F.3d 521, 532 (6th Cir. 2001) (citing *Chicago School* and two district court cases).

At least one state court in Illinois[6] has adopted the *Chicago School* rationale and concluded that "[t]he relationship between accrediting body and school is thus not one of contract; it is more akin to that of a licensing body to an entity it regulates . . . ." *Bosch v. N. Shore Univ. Health Sys.*, 155 N.E.3d 486, 494 (Ill. App. Ct. Dec. 11, 2019) (citing *Chicago Sch.*, 44 F.3d at 449). The Fourth Circuit in *Professional Massage* rested its conclusion that the accreditation standards were not a contract on Virginia law. 781 F.3d at 181 (quoting *Town of Vinton v. City of Roanoke*, 80 S.E.2d 608, 617 (Va. 1954) (internal citation omitted)).

---

[6] ACPE is based in Illinois and identified Cook County, Illinois as the forum for litigation in the ACPE Policies and Procedures. (ECF No. 13-8 at 33, 77.)

11

### 3. Application

The Court concludes that neither ACPE's Policies and Procedures nor its Standards 2016 constitute a contract between ACPE and Hampton University. Accordingly, Plaintiff's § 1981 claim fails as a matter of law, and the Court will not address Defendant's causation argument.

Plaintiff has not established the requisite contractual interest to give rise to a claim under § 1981. The Fourth Circuit's holding in *Professional Massage* is on point. *See* 781 F.3d at 180-81. Like the accrediting body in *Professional Massage*, ACPE can amend its Policies and Procedures and Standards 2016 unilaterally, even though the policies call for notice to stakeholders before an amendment to accreditation standards. (*See* Policies and Procedures, ECF No. 13-8 at 7, 103, 109.) And the rationale of other federal circuits, most notably the Seventh Circuit in *Chicago School*, is persuasive. The relationship between an accrediting body and institutions seeking accreditation is fundamentally not a contractual relationship, but rather is more akin to the relationship between an applicant and an administrative or licensing body. *Chicago School*, 44 F.3d at 449-50. Federal courts have developed a body of common law to address disputes in this context, which they have determined to provide a more appropriate structure for judicial review. *See Pro. Massage*, 781 F.3d at 170-72, 180-81; *id.* Moreover, under legal principles from both Illinois and Virginia, these documents do not establish a contractual relationship between ACPE and Hampton University. *See Pro. Massage* at 180-81; *Bosch*, 155 N.E.3d at 494.

Plaintiff has failed to sufficiently establish how the ACPE Policies and Procedures or the Standards 2016 constitute a contract between it and the Defendant. The Plaintiff points to a forum selection clause and definition section in the ACPE Policies and Procedures for the argument that because the Policies and Procedures document has contract-like elements, it must be a contract. (Resp. Opp'n at 4.) But the Fourth Circuit determined that the standards of accreditation in *Professional Massage*, which included similar provisions, did not constitute a contract between

12

the parties. *See* 781 F.3d at 180-81. And Plaintiff does not argue how the Standards 2016 would avoid a similar fate.

Plaintiff cannot establish how these documents constitute a meeting of the minds. Even if the parties "knew what ACPE was supposed to be doing," this was clearly a non-contractual, licensing-type relationship. (Resp. Opp'n at 7); *see Chicago Sch.*, 44 F.3d at 449-50. It strains credulity to conclude that the Policies and Procedures and Standards 2016, which ACPE developed to comply with Department of Education regulations and which were to be applied generally to pharmacy schools across the country, were intended to establish a contractual relationship between ACPE and Hampton University (or whichever other entities sent funds and requested accreditation).

Plaintiff's other attempts to distinguish this case from *Professional Massage* and *Chicago School* fail. The citations to out-of-circuit, out-of-context cases involving private testing companies are inapposite. (*See* Resp. Opp'n at 7 (citing *Ellinghaus v. Educ. Testing Serv.*, 2016 U.S. Dist. LEXIS 139918, at *23 (E.D.N.Y. Sep. 30, 2016); *Ass'n of Am. Med. Colls. v. Princeton Review, Inc.*, 332 F. Supp. 2d 11, 16 (D.D.C. 2004)).) And Plaintiff's argument that a motion to dismiss is improper because there are too many factual disputes is similarly off base. Whether the Policies and Procedures or the Standards 2016 embody a contractual relationship or are non-contractual is certainly a legal issue the Court can resolve on a motion to dismiss. *See Pro. Massage*, 781 F.3d at 181; *Chicago Sch.*, 44 F.3d at 449-50. Plaintiff has not established the requisite contractual interest to give rise to a claim under § 1981, so its claim in Count V will be dismissed.

### C. Count IX: Declaratory Judgment

Defendant seeks to dismiss the portions of Count IX that are premised on the claims in Counts IV and V. (Mem. Supp. at 16-17; *see* Am. Compl. ¶ 156 ("Hampton requests a declaratory judgment stating . . . (3) That ACPE violated the Higher Education Act by failing to provide

13

HUSOP with appropriate due process protections . . . (5) That ACPE's decision was retaliatory and racially motivated.").) Defendant notes that the Declaratory Judgment Act, 28 U.S.C. § 2201, is a remedial statute and does not extend jurisdiction or create substantive rights. (*Id.* (citing *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 55–56 (4th Cir. 2011) (internal citations omitted)).)

Plaintiff does not contest that the related portions of Count IX should be dismissed if Counts IV and V are dismissed, but rather acknowledges that those claims rise and fall together. (Resp. Opp'n at 17.) Accordingly, because the Court will grant the dismissal of Counts IV and V, it will also grant dismissal of the related portions of Count IX.

## V. CONCLUSION

For the reasons stated above, the Motion to Dismiss will be granted.

An appropriate Order shall issue.

                                                         /s/
                                      Roderick C. Young
                                      United States District Judge

Norfolk, Virginia
Date: August 12, 2021