IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| HAMPTON UNIVERSITY,  )<br>    Plaintiff,  )<br>        v.  )<br>  )<br>ACCREDITATION COUNCIL FOR  )<br>PHARMACY EDUCATION,  )<br>    Defendant.  )<br>_____  ) | Civil Action No. 4:20-cv-00118 (RCY) |

**MEMORANDUM OPINION**

This matter comes before the Court on Plaintiff's Motion for Certification of Interlocutory Appeal (ECF No. 117). Plaintiff's Motion for Certification has been fully briefed, and the Court dispenses with oral argument as to Plaintiff's Motion for Certification of Interlocutory Appeal because the facts and legal contentions are adequately presented in the materials before the Court and additional oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will deny Plaintiff's Motion for Certification of Interlocutory Appeal.

**I. BACKGROUND**

The Court incorporates the Background section of the Court's previous decision in *Hampton Univ. v. Accreditation Council for Pharmacy Educ.*, No. 4:20-CV-00118, 2022 WL 634580 (E.D. Va. Mar. 3, 2022). Thus, only a brief recapitulation of the pertinent facts is necessary here. Hampton University School of Pharmacy ("Hampton" or "Plaintiff") is a non-profit University and a member of Historically Black Colleges and Universities ("HBCU"). *Id.* at *1. The Accreditation Council for Pharmacy Education ("ACPE" or "Defendant") is the exclusive accreditor of Doctor of Pharmacy programs in the United States. *Id.* ACPE evaluates and accredits programs "in accord with Standards and Guidelines for the Professional Degree Program Leading

1

to the Doctor of Pharmacy (PharmD) Degree ("the Standards"). *Id.* ACPE annually monitors programs to ensure compliance with the Standards based on statistical analysis of program information and review of graduates' performance on standardized licensure examinations. *Id.* ACPE notifies programs that fall outside of two standard deviations from the national mean for the criterion in question. *Id.* Accompanying that notification is a "request that the program identify the cause of and provide an action plan for correcting any of the aforementioned circumstances." *Id.* at *2. "If a program fails to bring partially compliant or non-compliant standards into compliance within the given timeframe, the program will be placed on probationary status and may face an adverse accreditation action." *Id.* After a series of events that involved an on-site visit, a hearing, and placing Hampton on probation, ACPE withdrew Hampton's accreditation. *Id.* at *2-3. Hampton exercised its right to appeal but the Appellate Commission affirmed ACPE's decision to withdraw the accreditation. *Id.* at *3.

## II. PROCEDURAL HISTORY

The Court incorporates the Procedural History section of the Court's previous decision in *Hampton Univ. v. Accreditation Council for Pharmacy Educ.*, No. 4:20-CV-00118, 2022 WL 634580 (E.D. Va. Mar. 3, 2022). Hampton filed its Complaint on July 23, 2020 (ECF No. 1). Contemporaneously, Plaintiff filed a Motion for a Temporary Restraining Order to enjoin Accreditation Council for Pharmacy Education ("ACPE") from formally withdrawing Hampton's accreditation at the upcoming July 29, 2020, ACPE board meeting (ECF No. 7). Hampton's Motion for a Temporary Restraining Order was denied on July 27, 2020 (ECF No. 14). On September 1, 2020, Defendant filed a Partial Motion to Dismiss (ECF No. 31). Defendant sought to dismiss two of Plaintiff's nine counts (Counts IV and V) and the related portions of Plaintiff's

declaratory judgment count (Count IX). (*Id.*) Plaintiff opposed this motion and alternatively sought leave to amend its complaint. (ECF No. 33.)

Plaintiff filed its Motion for Preliminary Injunction on October 16, 2020. (ECF No. 46.) As briefing ensued, ACPE filed the Administrative Record on October 30, 2020. (ECF Nos. 52-57.) The Administrative Record exceeds 6,000 pages and comprises documents considered by the ACPE Board and the ACPE Appellate Commission in reaching their respective accreditation decisions. On November 23, 2020, Defendant filed a Motion for Summary Judgment. (ECF No. 69) and a Memorandum in Support. (ECF No. 70.) On December 21, 2020, Plaintiff filed a Response in Opposition to ACPE's Motion for Summary Judgment. (ECF No. 73.) Subsequently, Defendant filed a Reply in Support of Summary Judgment. (ECF No. 74.)

On February 5, 2021, Plaintiff filed a Motion for Leave to Amend Its Complaint ("Motion to Amend"). (ECF No. 75.) Then, on February 25, 2021, Plaintiff filed two more motions: a Motion to Supplement the Administrative Record (ECF No. 79), and a Motion for Additional Discovery and for a Scheduling Order (ECF No. 81). On July 27, 2021, the Court issued an opinion and order addressing the two motions. (ECF Nos. 91-92.) The orders (1) granted Plaintiff's Motion to Amend its complaint, (2) denied Plaintiff's Motion to Supplement the Administrative Record, (3) denied Plaintiff's request for additional discovery, and (4) granted Plaintiff's request to issue a scheduling order, pending an initial pretrial conference.

On August 3, 2021, Plaintiff filed an Amended Complaint. (ECF No. 93.) On August 12, 2021, the Court granted Defendant's Motion to Dismiss Counts IV (Violation of Due Process Under the Higher Education Act) and V (Violation of 42 U.S.C. § 1981) and partially dismissed the pertinent parts of Count IX. (ECF Nos. 96-97.) On September 2, 2021, the Court granted Plaintiff's Motion to Withdraw its Motion for Preliminary Injunction (ECF No. 99).

On September 14, 2021, the Court heard oral argument on Defendant's Motion for Summary Judgement. Following the hearing, the Court granted Plaintiff's request for leave to file a motion for summary judgment (ECF No. 103). Plaintiff filed its Motion for Summary Judgment on November 1, 2021 (ECF No. 105). Defendant filed its Response in Opposition to Plaintiff's Motion for Summary Judgment on November 23, 2021 (ECF No. 112). Plaintiff filed its Reply on December 6, 2021 (ECF No. 114). On March 3, 2022, the Court granted Defendant's Motion for Summary Judgment in part as to Counts I, II, and related portions of IX; denied Defendant's Motion for Summary Judgment in part as to Count III; and denied Plaintiff's Motion for Summary Judgment. (ECF Nos. 115-116).

On April 4, 2022, Plaintiff filed a Motion for Certification of Interlocutory Appeal (ECF No. 117). On April 7, 2022, Defendant, with the consent of Plaintiff, filed a Motion for Extension of the Briefing Schedule (ECF No. 119), which the Court granted on April 11, 2022 (ECF No. 120). Defendant filed its Response in Opposition to Plaintiff's Motion for Certification of Interlocutory Appeal on April 25, 2022 (ECF No. 121). On May 2, 2022, Plaintiff filed its Reply in Support of its Motion for Certification of Interlocutory Appeal (ECF No. 123). On May 4, 2022, Plaintiff filed a Motion to Submit Motion for Certification of Interlocutory Appeal without Oral Argument (ECF No. 125).

### III. LEGAL STANDARD

Title 28 U.S.C. § 1292(b) provides that a United States District Court judge may certify any "order not otherwise appealable under this section" for interlocutory appeal when the judge is "of the opinion that such order [1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion, and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." "Failing to meet even one of the

statutory requirements will defeat a litigant's request for an interlocutory appeal." *Fitch v. Maryland*, No. CV PJM 18-2817, 2022 WL 2106101 (D. Md. June 10, 2022). The statutory language has been interpreted to give district courts "circumscribed authority to certify for immediate appeal interlocutory orders deemed pivotal and debatable." *Swint v. Chambers County Comm'n*, 514 U.S. 35, 46 (1995). Additionally, courts have established "that because § 1292(b) is contrary to the general rule that appeals may be had only after a final judgment, it should be used sparingly and its requirements must be strictly construed." *Difelice v. U.S. Airways, Inc.*, 404 F. Supp. 2d 907, 908 (E.D. Va. 2005) (citing *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989)). "[T]he certification of an interlocutory appeal requires 'exceptional circumstances that justify a departure from the basic policy limiting appellate review to final judgments.'" *Id.* (internal citations omitted). The Fourth Circuit has noted that an interlocutory appeal "may be appropriate where the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts." *United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 340-41 (4th Cir. 2017) (internal quotations omitted). In that same vein, an interlocutory appeal is not appropriate when "the question presented turns on whether there is a genuine issue of fact or whether the district court properly applied settled law to the facts or evidence of a particular case." *Id.* (internal quotations omitted).

## IV. ANALYSIS

### A. Controlling Question of Law

First, Hampton must demonstrate that the matter "involves a controlling question of law." 28 U.S.C. § 1292(b). A "question of law" refers to "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine," *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 623 (D. Md. 2013), but not including "questions of law heavily freighted

with the necessity for factual assessment." *Fannin v. CSX Transp., Inc.*, No. 88-8120, 1989 WL 42583, at *5 (4th Cir. 1989) (unpublished table decision). "Such questions of law have usually been thought not the kind of controlling question proper for interlocutory review under § 1292(b) [,] because they inflict[ ] upon courts of appeals an unaccustomed and illsuited role as factfinders." *Butler v. DirectSAT USA, LLC*, 307 F.R.D. 445, 452 (D. Md. 2015) (internal quotations omitted). "Even where the question presented is a legal one, if resolution of that issue is rooted in the facts of a particular case, the question is not proper for interlocutory review." *Mears Grp., Inc. v. Kiawah Island Util., Inc.*, No. 2:17CV02418, 2019 WL 2297345, at *6 (D.S.C. May 30, 2019) (quoting *Randolph v. ADT Sec. Servs., Inc.*, 2012 WL 273722, at *5 (D. Md. Jan. 30, 2012)).

> Hampton moves to certify the following question for interlocutory appeal:
>
> Having found Plaintiff partially or totally noncompliant with Standard 17, whether ACPE's multiple failures over multiple years to include an outline of the requirements for bringing Standard 17 into compliance, and its consequent violation of its own Policy 11.5.1, constitutes prejudicial error as a matter of law.

(Mem. Supp. Mot. 1, ECF No. 118). Hampton contends that this question is a controlling question of law because "the Fourth Circuit will not need to weigh disputed facts or otherwise review matters outside the Record," but will only have to determine "whether ACPE's violation of Policy 11.5.1 (as determined by this Court) constituted prejudicial error." (*Id.* 6). Put differently, Hampton claims that it "seeks a clarification of the legal test as to when an agency's violation rises to the level of a violation of common law due process and/or constitutes prejudicial error." (Reply Supp. Mot. 4, ECF No. 123.) On the other hand, ACPE contends that, while Hampton phrases its question as a matter of law, the question is not a controlling question of law because "the inquiry is fact dependent, and not a 'pure' question of law" because the review "necessarily requires an examination of the [factual] [r]ecord." (Resp. Br. Opp. Mot. 8, ECF No. 121).

6

The Court agrees with ACPE and finds that the resolution of Hampton's proposed question requires a detailed examination of the factual record. To answer Hampton's question, the Fourth Circuit would have to determine the prejudicial effect of ACPE's failure to provide Hampton an outline to re-enter compliance. In making the call on the prejudicial effect, the Fourth Circuit would necessarily inquire into the factual record to determine just how much ACPE's decision not to provide an outline for re-compliance harmed Hampton and thus curbed its common law due process rights. *See, e.g.*, *Thomas M. Cooley L. Sch. v. Am. Bar Ass'n*, 459 F.3d 705, 713-16 (6th Cir. 2006) (evaluating the factual record to determine the prejudicial effects of an accrediting agency's decisions). These factual inquiries are exactly the ones that court of appeals are "unaccustomed and illsuited" to resolve on interlocutory appeal. *Fannin*, 873 F.2d 1438, at *5. Thus, Hampton's question fails to qualify as a controlling question of law.

### B. Substantial Ground for Differences of Opinion

Not only must Hampton show that the question of law at hand is controlling, it must also show that "there is substantial ground for difference of opinion" regarding that question. 28 U.S.C. § 1292(b). "An issue presents a substantial ground for difference of opinion if courts, as opposed to parties, disagree on a controlling legal issue." *Randolph v. ADT Sec. Servs., Inc.*, No. DKC 09-1790, 2012 WL 273722, at *6 (D. Md. Jan. 30, 2012). "[T]he mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *Flor v. BOT Fin. Corp. (In re Flor)*, 79 F.3d 281, 284 (2d Cir. 1996).

Hampton contends that whether an "accreditation agency's violation of its own policies and procedures is prejudicial error" is a "novel question of law in this Circuit." (Mem. Supp. Mot. 6-7.) It notes that while the Fourth Circuit has addressed cases dealing with "substantial evidence

7

and bias considerations," only one accreditation case has involved an agency violating its own policies and procedures. (*Id.*). There, the Fourth Circuit held that "[a]gency actions are generally invalid where the 'agency fails to follow its own procedures or regulations'" *Bristol Univ. v. Accrediting Council for Indep. Colls. & Schs*, 691 F. App'x 737, 741 (4th Cir. 2017). However, Hampton contends that, in the Fourth Circuit, "there is no case law as to what 'generally invalid' means or where the line between trivial violations . . . vs. fundamental violations . . . is, especially in the accreditation and common law due process contexts." (Reply Supp. Mot. 2.) Thus, Hampton, in its own words, "seeks a clarification of the legal test as to when an agency's violation rises to the level of a violation of common law due process and/or constitutes prejudicial error, following the reasoning in *Bristol* that agency actions are 'generally invalid' when an accreditation body fails to follow its own rules." (*Id.* 4.) However, ACPE argues that case law has pre-determined that "[a]ll deviations from procedures do not constitute a violation of constitutional due process," and thus it "follows that a violation of an accreditation agency's policies and procedures would not, as a matter of law, constitute a violation of the more limited requirements of *common law* due process." (Resp. Br. Opp. Mot. 9-10.)

Even when construing Hampton's question as narrowly as Hampton wishes the Court to do, the Court finds that there is no substantial ground for differences of opinion regarding the matter. The fact that the question is novel and unaddressed by the Fourth Circuit alone is not enough to create a substantial ground for differences of opinion sufficient to grant certification of an interlocutory appeal. *See Kennedy v. Villa St. Catherine, Inc.*, 2010 U.S. Dist. LEXIS 145063, at *6 (D. Md. June 16, 2010); *David v. Alphin*, 2009 U.S. Dist. LEXIS 108413, at *11-12 (W.D.N.C. Oct. 30, 2009); *see also Frist v. Gallant*, 240 F. Supp. 827, 830 (D.S.C. 1965) (certifying for interlocutory appeal an issue "as to which there are substantial grounds for

difference of opinion, and one of first impression"). Here, Hampton fails to provide any case law that indicates contrasting or differing opinions on the prejudicial effect of an agency's failure to comply with its own procedures in the accreditation context. Instead, Hampton relies solely on the argument that the issue at hand is novel to the Fourth Circuit and thus meritorious of an interlocutory appeal. Therefore, the Court finds that there is no substantial ground for differences of opinion on Hampton's proposed question.

### C. Material Advancement of Termination of Litigation

Lastly, even if Hampton can demonstrate that there is a substantial ground for differences of opinion on a controlling question of law, it must also show that the interlocutory appeal would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "[I]n determining whether certification will materially advance the ultimate termination of the litigation, a district court should consider whether an immediate appeal would: (1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly." *Hammons v. Univ. of Maryland Med. Sys. Corp.*, No. CV DKC 20-2088, 2021 WL 4951921, at *6 (D. Md. Oct. 25, 2021) (citing *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 626 (D. Md. 2013)).

Hampton contends that the interlocutory appeal would materially advance the termination of the litigation because the appellate court's decision in favor of Hampton would leave "no need for a trial on the bias issues, nor much in the way of further proceedings at all." (Mem. Supp. Mot. 10.) On the other hand, ACPE contends that the resolution of the rest of the case is likely to "occur before resolution of Hampton's proposed interlocutory appeal." (Resp. Br. Opp. Mot. 11.) Further, ACPE notes that "'[t]here is no further discovery or motions practice that needs to occur" other than the resolution of the single pending bias claim. (*Id.*).

9

The Court believes Hampton's claims that resolution of the interlocutory appeal in its favor would likely save the need for a trial but finds it likely that Hampton's remaining bias claim against ACPE will resolve prior to the conclusion of the interlocutory appeal. While a speedy interlocutory appeal may eliminate the need for a trial, the appeal would not "eliminate complex issues so as to simply trial" nor would it "make discovery easier and less costly." *Hammons*, 2021 WL 4951921, at *6. However, even if Hampton is correct and this interlocutory appeal would materially advance the termination of this litigation, certification of interlocutory appeal is still not proper in this instance because there is no substantial ground for difference of opinion on a controlling question of law.

## V. CONCLUSION

Therefore, for the foregoing reasons, the Court will deny Plaintiff's Motion for Certification of Interlocutory Appeal (ECF No. 117).

An appropriate Order shall issue.

/s/<br>
Roderick C. Young<br>
United States District Judge

Richmond, Virginia
Date: October 7, 2022